IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRACY R.,[1]

        **Plaintiff,**

  v.

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

Civil Action 2:22-cv-3332
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff, Tracy R., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.  This matter is before the Court for on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 6).  For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed her application for benefits on February 7, 2020, alleging that she became disabled on July 27, 2019, due to rheumatoid arthritis, osteoporosis, high blood pressure, anxiety disorder, depression, a lung disorder, tuberculosis, and a stomach problem. (R.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

at 165-71, 196.) Plaintiff's application was denied initially in May 2020 and upon reconsideration in July 2020. (R. at 80-96, 99-107.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 108-24.) Administrative law judge Deborah F. Sanders (the "ALJ") held a telephone hearing on February 26, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 41-79.) A vocational expert ("VE") also appeared and testified. (*Id.*) On July 22, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 18-40.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

## II.     RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    ADMINISTRATIVE DECISION

On July 22, 2021, the ALJ issued her decision. (R. at 18-40.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31,

2024. (R. at 23.) Then, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 27, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: osteoarthrosis, inflammatory arthritis, pulmonary tuberculosis, essential hypertension, and obesity. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could lift and/or carry 20 occasionally and 10 pounds frequently; she could sit for 6 hours in an 8-hour workday and stand and/or walk for 6 hours in an 8-hour workday; she could push and pull as per her ability to lift and/or carry; she could frequently climb ramps and stairs; she should avoid climbing ladders, ropes, or scaffolds; she could frequently stoop, kneel, crouch, and crawl; she should avoid all exposure to hazards, such as unprotected heights, working around hazardous machinery, and commercial driving; and she could frequently handle and finger with the bilateral upper extremities.

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 27.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff is capable of performing her past relevant work as a sales clerk. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 32-33.) Further relying on the VE's testimony, the ALJ made an alternate finding at Step 5, concluding that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a mail clerk, cafeteria attendant or coallator operator. (R. at 33-34.) She therefore concluded that Plaintiff has not been disabled since July 27, 2019. (R. at 34.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ erred in her RFC determination because she failed to properly evaluate the opinion evidence of consultative examiner Natalie Ferretti, M.D. (ECF Nos. 7 and 10). The Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4)

evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.*

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

> persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)). "By contrast, 'consistency' involves comparing a medical opinion or prior administrative medical finding with ***the evidence from other medical sources and nonmedical sources*** in the claim." *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 416.920c(c)(2) (emphasis added)).

The starting point for the Court's analysis is Dr. Ferretti's opinion. Plaintiff summarized Dr. Ferretti's opinion and, in the absence of any challenge to its accuracy by the Commissioner, the Court restates that summary here:

> On April 8, 2021, Dr. Ferretti, completed a physical consultative examination of Plaintiff. T 1157-1159. As part of her examination, Dr. Ferretti reviewed Plaintiff's history of present illness, past medical history, review of systems and medications. T 1157. She also reviewed x-ray results of Plaintiff's right ankle and noted "remote post-operative changes and degenerative changes." T 1160. Dr. Ferretti's physical

7

> examination revealed normal results except for the following: Plaintiff could not complete a straight leg raise test due to pain. T 1158. She ambulated with a cane on the right side for extra support. T 1158. Dr. Ferretti also noted "diminished strength and reduced range of motion throughout secondary to the joint pain." T 1159. Dr. Ferretti also noted social anxiety. T 1159. Ultimately, Dr. Ferretti opined that Plaintiff "could perform less than sedentary work." T 1159.
>
> Dr. Ferretti also completed a medical source statement of ability to do work-related activities. T 1161-1168. In it, she opined that Plaintiff could lift twenty pounds no more than frequently and carry twenty pounds no more than occasionally. T 1161. Dr. Ferretti opined that Plaintiff cannot sit for longer than 30 minutes, stand for 20 minutes, or walk for 15 minutes at one time without interruption. T 1162. She opined that Plaintiff could sit for 6 hours, stand for 1 hour, and walk for 1 hour total in a day. T 1162. Dr. Ferretti wrote that she walks with a cane and that a prior fall resulted in an ankle fracture resulting in more constant use of the cane. T 1162. Dr. Ferretti also opined to limitations in Plaintiff's right-hand ability to reach in all directions and to push or pull. T 1163. She opined that she can no more than occasionally climb stairs and ramps and stoop. T 1164. She determined that Plaintiff should never climb ladders or scaffolds, balance, kneel, crouch, or crawl. T 1164. Dr. Ferretti limited Plaintiff's exposure to unprotected heights and moving mechanical parts. T 1165.

(ECF No. 7 at 7-8.)

According to Plaintiff, had the ALJ adopted Dr. Ferretti's opinion, Plaintiff would have been found disabled under the framework of Social Security Ruling 83-10 or as directed by Medical-Vocational Rule 201.14. In Plaintiff's view, Dr. Ferretti, through her examination and notes, provided ample support for her opined limitations as to Plaintiff's postural, exertional, environmental, and manipulative limitations. But, Plaintiff contends, the ALJ considered none of this, instead explaining in detail only why she rejected Dr. Ferretti's finding that Plaintiff required the use of a cane. Plaintiff emphasizes that, at no point, does the ALJ explain why she did not adopt Dr. Ferretti's less than sedentary lifting, carrying, or sitting restrictions. Beyond this, Plaintiff contends that the ALJ failed to consider whether Dr. Ferretti's opinion was consistent with the entirety of the record. To underscore this point, Plaintiff cites to other record

8

evidence confirming degenerative changes and rheumatoid arthritis, including records from Dr. Karl Sanders (R. at 1089) and Dr. Shela Atiq (R. at 342-343).

A fair reading of the ALJ's decision as a whole confirms that the ALJ complied with the governing regulations in her evaluation of Dr. Ferretti's opinion. In finding the opinion unpersuasive, the ALJ set forth the following discussion:

> First, I considered the opinion of Dr. Natalie Ferretti, a medical consultative examiner, who evaluated [Plaintiff] on April 8, 2021 and opined that she could perform less than sedentary work (12F). Accordingly, I find the consultative examiner's opinion to be non-persuasive, as said opinion is neither consistent with nor supported by the totality of the record, which documents stable findings with the use of prescribed medication. Moreover, the totality of the record fails to document that the use of an assistive device is medically necessary. The undersigned acknowledges that the evidence of record documents [Plaintiff]'s use of a cane, at times. However, the record fails to document frequent falls or near falls; additionally, the record generally fails to document the regular use of a cane or other assistive device, as many office visits make no reference to [Plaintiff] having an ambulatory aid at the time of the visits. Consequently, the undersigned finds that the record does not support a finding that an assistive device was medically necessary for a material period of time. Further, the evidence of record fails to document recurring emergency care or inpatient hospitalizations for falls, and fails to document that an acceptable medical source has found that the use of an assistive device is medically necessary. Consequently, I find that the limitations found within the above-stated RFC adequately account for and accommodate the limitations resulting from [Plaintiff]'s severe physical impairment by limiting the nature of her work activities as stated therein.

(R. at 31-32.)

Elsewhere in her decision, the ALJ noted Dr. Ferretti's examination findings:

> On April 8, 2021 x-ray examination of the [Plaintiff's] right ankle revealed evidence of prior surgical intervention, prominent calcaneal and enthesophyte formation, and mild tibiotalar osteoarthritis; however, no acute osseous abnormalities were observed (12F/4). Further, a muscle examination revealed grossly normal findings; additionally, a range of motion evaluation revealed grossly normal findings, except for the associated bilateral shoulder, bilateral hip, and right ankle findings. (*Id*. at 11-15).

(R. at 30-31 citing R. at 1160; 1167-1171.)  This discussion, citing Dr. Ferretti's own report, goes directly to the issue of supportability, *i.e.,* how well Dr. Ferretti's own testing and clinical observations supported her opinion as to Plaintiff's functional abilities.  *See* 20 C.F.R. § 404.1520c(c)(1).  The excerpt above indicates that the ALJ discounted Dr. Ferretti's proposed limitations based on Dr. Ferretti's reported findings that Plaintiff had a largely normal muscle examination and range of motion evaluation.  To the extent that the ALJ noted exceptions, she confirmed that the RFC "limit[ed] [Plaintiff] to work at the light level of exertion." (R. at 31.)

Similarly, the ALJ provided adequate discussion of the consistency between Dr. Ferretti's opinion and the remaining evidence of record.  Again, Plaintiff takes particular issue with the ALJ's alleged failure to "explain why she did not adopt Dr. Ferretti's less than sedentary lifting, carrying, or sitting restrictions."  (ECF No. 7 at 9; ECF No. 10 at 3.)  Plaintiff cites to very limited findings from two other physicians, Drs. Atiq and Saunders, to demonstrate the ALJ's failure to consider their consistency with Dr. Ferretti's opinion.  This is nothing more than a request to reevaluate the evidence.  Moreover, the ALJ discussed other findings set forth in the same sets of notes from these physicians (R. at 28 citing R. at 988; and 29 citing R. at 1032; 1033; 1054; 1071; 1074; 1075; 1077; 339; 503; 523; 533) and had no obligation "to cite every piece of evidence in the record to show it was considered."  *Robinson v. Comm'r of Soc. Sec.,* No. 20-12117, 2022 WL 687247, at *2 (E.D. Mich. Mar. 8, 2022), *aff'd,* No. 22-1397, 2022 WL 17168444 (6th Cir. Nov. 22, 2022) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th. Cir. 2006)).  That is, the ALJ was not required to specifically discuss each area of disagreement with Dr. Ferretti's work-preclusive opinion.  To be sure, the ALJ did not explicitly compare medical evidence on this specific point to Dr. Ferretti's opinion or refer to in the same

sentence or paragraph discussing that opinion.  However, "an ALJ is not required to repeat [her] analysis of the evidence in [her] evaluation of a medical opinion." *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL 17335383, at *7 (S.D. Ohio Nov. 30, 2022) (citing *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)).  Again, reading the ALJ's decision as a whole, the ALJ discussed in some detail evidence that contradicted Dr. Ferretti's opinion.

For example, the ALJ noted that Plaintiff underwent a left total knee replacement procedure in April 2019, at a post-operative visit she demonstrated full flexion and extension without discomfort, and at a later visit she was observed to have full range of motion with no swelling or instability of the knee.  (R. at 28-29 citing R. at 444-447; 988; 940; 943.)  Further, the ALJ cited Plaintiff's reported ability to walk 1/5 of a mile on paved ground in October 2019. (R. at 29 citing R. at 1054.)  Additional records highlighted by the ALJ indicated that in August 2020, Plaintiff was able to ambulate without the use of an assistive device and in October 2020, her rheumatoid arthritis of the knee was noted to be stable.  (R. at 30 citing R. at 1129; 1150.) The ALJ also cited a report from November 2020, indicating that Plaintiff's right ankle pain was well-controlled.  (*Id*. citing R. at 1109.)  By way of one final example, the ALJ discussed that, while Plaintiff sought treatment in 2020 for left knee, right ankle and bilateral leg pain, she was treated conservatively with prescribed medications.  (*Id.* citing R. at 809; 815; 822; 827; 831; 838.)  In summarizing the medical evidence, the ALJ concluded that "the evidence support[s] limiting [Plaintiff] to performing work at the light level of exertion, consistent with the limitations found in the … RFC, as the record documents a history of conservative care for [her]

severe impairments and regular[ly] documents grossly normal physical examination findings." (R. at 31.)

In short, the ALJ sufficiently articulated her rejection of Dr. Ferreti's work-preclusive opinion and supported that conclusion with substantial evidence. Moreover, the ALJ's analysis of Dr. Ferretti's opinion allowed the Court to conduct a sufficient review of the decision because she built a logical bridge between the evidence and her conclusion. Again, Plaintiff's challenge is essentially a request to reevaluate the evidence. However, even if a preponderance of the evidence supports Plaintiff's position, the Court will not disturb the Commissioner's decision so long as substantial evidence also supports the conclusion by the ALJ reached. *O'Brien v. Commissioner of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020). Under this standard, the Court cannot reweigh the evidence. *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013). That is the situation here. Accordingly, based on a reading of her decision as a whole, the ALJ did not err in her analysis of Dr. Ferretti's medical opinion.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 7) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Date: <u>July 14, 2023</u>　　　　　　　　　　　s/ *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　**ELIZABETH A. PRESTON DEAVERS**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**